844 A.2d 538

THERESA M. BONZELLA AND THOMAS BONZELLA, PLAINTIFFS–RESPONDENTS/CROSS–APPELLANTS, v. MONROE TOWNSHIP, A NEW JERSEY MUNICIPAL CORPORATION, DEFENDANT–APPELLANT/CROSS–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 10, 2004—Decided March 29, 2004.

Before Judges KING, BRAITHWAITE and S.L. REISNER.

*Ila Bhatnagar* argued the cause for appellant/cross-respondent (*Brown & Connery*, attorneys; *Christine P. O'Hearn*, on the brief).

*Gerald A. Sinclair* argued the cause for respondents/cross-appellants (*Mr. Sinclair*, on the brief).

The opinion of the court was delivered by

S.L. REISNER, J.A.D.

Monroe Township (Township) appeals from a trial court order granting summary judgment in favor of respondents Thomas and Theresa Bonzella (Thomas and Theresa) on their claim that as retired township employees with twenty-five years of service, they were each separately entitled to a policy of health insurance covering themselves and their dependents. Respondents cross-appeal the dismissal of their breach of contract, emotional distress, Equal Protection, and Law Against Discrimination claims.

After an evidentiary hearing, the trial judge held that the applicable Township resolution uniformly guaranteed individual and dependent coverage for each retired employee with twenty-five years of service and that the Township business administrator had no authority to deny Theresa's application for such coverage. Because we conclude that the trial judge correctly interpreted the resolution, we affirm the judgment ordering the Township to provide the benefits sought by respondents. Pursuant to *N.J.S.A.* 40A:10-23, health care coverage for retired municipal employees can only be provided on a uniform basis, by ordinance or resolution; benefits cannot be denied on the basis of budget-driven ad

hoc determinations by municipal officials. We further hold that because Thomas and Theresa each worked the required twenty-five years, they now each have a contractual right to the promised benefits, which the Township cannot unilaterally abrogate. Since our decision provides respondents with the relief they sought, it is unnecessary to address the remaining issues raised on their cross-appeal.[1]

I

The statute governing health care benefits for municipal retirees provides, in relevant part:

> The employer may, in its discretion, assume the entire cost of such coverage and pay all of the premiums for employees ... b. who have retired after 25 years or more of service credit in a State or locally administered retirement system and a period of service of up to 25 years with the employer at the time of retirement, such period of service to be determined by the employer and set forth in an ordinance or resolution as appropriate, ... including the premiums on their dependents, if any, under uniform conditions as the governing body of the local unit shall prescribe.
>
> [*N.J.S.A.* 40A:10–23.]

Pursuant to the statute, the Township Council adopted two resolutions related to health insurance coverage for retired Township employees during the time of respondents' employment. The first resolution, R–50–82, was adopted in April 1982, while the Township was enrolled in the State Health Benefits Program. That resolution, entitled "Resolution to adopt the provisions of Chapter 88, Public Laws of 1974 to permit local public employers to pay the premium charges for certain eligible pensioners and their dependents and to pay Medical charges for such retirants

---

[1] We do not reach the issue of whether the Township could amend the resolution, on terms applicable to prospective employees, to eliminate the so-called "double coverage" post-retirement benefit. That issue is not before us. We also need not resolve the issue (addressed briefly at the hearing below) of whether the Township could by resolution offer an opt-out payment to retirees who decline coverage, although we note that the applicable statute, *N.J.S.A.* 40A:10–17.1, would appear to authorize such a payment.

and their spouses covered by the New Jersey State Health Benefits Program," included the following language:

> We hereby agree to pay the premium or periodic charges for the benefits provided to all eligible retired employees and their dependents covered under the program, but not including survivors, if such employees retire from a[s]tate or locally-administered retirement system effective after the date the employer adopted the State Health Benefits Program on a benefit based on 25 years or more of service credited in such retirement system . . . .

The second resolution, R–62–93, adopted by the Town Council in March 1993, stated that the Township was withdrawing from the New Jersey State Health Benefits Program, but intended to continue to provide health benefits to its retirees as follows:

> [T]he Township of Monroe shall provide . . . insurance coverage for all employees retired after 25 years or more of service with Monroe Township under the sames [sic] terms and conditions as is otherwise set forth in R–50–82.

The Township had provided health insurance benefits to Thomas and Theresa during their employment. Thomas testified that when he and Theresa married in 1977, they were both township employees and were covered by the State Health Benefits Program. From 1977 until 1993, each had his or her own policy and was also covered by the other's policy as a dependent. This meant that they were able to choose which plan to use when they needed medical care, depending on which one would provide better coverage. Thomas testified that the two policies provided them with more significant coverage than an individual family policy. Any amount not covered by one policy (e.g., co-payment, deductible, lifetime benefits) could be covered by the other's with a maximum benefit of 100% of the medical cost.[2]

Beginning in 1993, Theresa took advantage of a new "opt-out" provision adopted by the Township; in lieu of providing a separate health insurance policy, the Township paid her $200 per month.

---

[2] Thomas testified that the contract covering his collective bargaining unit also provided that the Township would provide medical coverage for him and his spouse when he retired. At his deposition the Township business administrator Peter Brusco appeared to concede this point. However, the collective bargaining agreement is not in the record and we therefore will not address the issue of Thomas' entitlement under the contract.

The opt-out option was designed to reduce the Township's costs of insurance for active, rather than retired, employees.

Starting in 1995, the Township offered three separate Aetna Insurance plans to its employees and retirees: the Premier, the Patriot 10, and the Patriot 5 plans. The terms of the plans varied, and carried different deductibles, co-payments, referral networks and other requirements. On November 18, 1999, prior to her retirement, Theresa notified Peter Brusco (Brusco), the Township business administrator, that she wanted to discontinue her participation in the "opt-out" program and enroll in the Patriot 10 plan. That plan would have provided coverage for Theresa and for Thomas as her dependent spouse. She was then insured under Thomas' policy, the Premier plan, as a dependent spouse. If Theresa had been given what she had requested, Thomas would have kept his plan with coverage for Theresa, and she would have a plan that would also cover him.

On November 19, 1999, Brusco wrote to Theresa that her options were limited: either she could continue to be covered under Thomas's health coverage as his dependant spouse, or she could elect to carry her own individual plan, at which time Thomas's health coverage would also change to an individual plan.

Theresa and Thomas both retired in August 2000. Because she could not have her own plan with Thomas covered, Theresa chose to be covered under Thomas's plan; at the time of trial there was only one policy, in Thomas' name with Theresa as dependent. They were thus deprived of the considerable benefits of cross-coverage, including two lifetime benefit limits (one under each policy), a wider choice of physicians, better total deductible reimbursement and generally greater flexibility in their medical care. Thomas testified at the hearing that because they did not have cross-coverage, they had incurred substantial additional health care expenses since their retirement, and he had to postpone dental treatment due to yearly coverage limits in his plan.

At the hearing, Brusco testified that the Township would not cover respondents under two policies that gave each person spous-

al coverage, which he termed "double coverage." They could either have one policy providing coverage for both, or two policies providing single coverage for each. He contended that he had checked the Township's records and found that the Township had never provided such coverage to retirees before, and that in his opinion it would be "a total waste of taxpayer's funds" that would produce "little or no benefit." The latter view was contradicted by Thomas' testimony concerning the considerable benefits of cross-coverage.

Because the Township's former personnel clerk, Lori Bryan (Bryan), had died, the parties agreed to submit her deposition testimony at the hearing. Her testimony, based on her tenure since 1997, confirmed that the Township did not have a written policy on double coverage and there were no resolutions or ordinances on that issue. Rather, according to Bryan the denial of Theresa's request was the result of the new mayor's determination to make all possible budget cuts to save money.

## II

In a letter opinion dated December 13, 2002, Judge Bowen ruled in respondents' favor on the critical issue of the proper construction of the resolution. The opinion noted that *N.J.S.A.* 40A:10-23 requires employers providing free health insurance to retired employees to do so "under uniform conditions as the governing body of the local unit shall prescribe." Because the decision to disallow two insurance policies, each providing both individual and dependent spouse coverage, was not made by the Town Council by resolution, the court held:

> The legislature has made it the responsibility of the local governing body/employer to prescribe uniform conditions. While the township argues that denying double coverage is a uniform condition and therefore does not violate the statute . or the township's resolution, that argument does not exempt the township from the statutory requirement that the governing body, and not its executive, adopt the policy.
>
> *There is no uniform policy in Monroe Township which denies married retired employees double benefits.* As a result of the statutory framework, the business

administrator could not decide to not issue double coverage, in the absence of local government action.
[emphasis added]

The record amply supports the findings of the trial court. A reasonable fact finder could conclude that the Township permitted cross-coverage for current employees, based on Thomas' testimony and the undisputed fact that the Township offered its employees $200 per month if they waived the right to their own separate health benefits policy. Theresa received this $200 opt-out payment while she was covered as a dependent under Thomas' policy. If she had not opted out, she would have had cross-coverage under her own policy and Thomas' policy.

There is nothing novel about such cross-coverage for public employees. The statute which permits municipalities to adopt an opt-out provision, *N.J.S.A.* 40A:10-17.1, acknowledges the availability of cross-coverage. Under the statute, employees taking advantage of the opt-out must be covered under a spouse-employee's policy and must waive "coverage under the . . . municipality's . . . plan to which the [waiving] employee is entitled by virtue of employment with the . . . municipality." *Id.*

Having concluded that the Township permits cross-coverage for current employees and that there is nothing novel or anomalous about such coverage, it is reasonable to construe the resolution as providing the same coverage for retirees unless it specifies a lower level of coverage. *See, Jacobs v. New Jersey State Highway Auth.,* 54 *N.J.* 393, 401–02, 255 *A.2d* 266 (1969). It does not. To the contrary, the resolution specifies that the Township will provide coverage for "all eligible retired employees and their dependents."

█ We also agree with respondents that after working for twenty-five years, they had a contractual right to the benefits provided by the resolution. Both Theresa and Thomas worked for the same amount of time and earned the same kind of coverage. The coverage is part of their compensation, as established by *Gauer v. Essex County Div. of Welfare,* 108 *N.J.* 140, 149–51, 528

*A*.2d 1 (1987). There the Court held that a county could not unilaterally terminate benefits to employees who had been hired and/or retired at a time when the county guaranteed them post-retirement health benefits. *Id.* at 150, 528 *A*.2d 1. While *N.J.S.A.* 40A:10–23 gave a municipality the discretion whether to assume the burdens of post-retirement benefits, once the decision to pay for benefits is made, those benefits become part of the employees' compensation. *Gauer, supra,* 108 *N.J.* at 150, 528 *A*.2d 1. Like pension benefits, reimbursement for medical premiums was not a gratuity. *Ibid.* "We are persuaded that the reimbursement of health insurance premiums to long-standing employees was intended at least in part as compensation for extended tenure." *Id.* at 149–50, 528 *A*.2d 1. "[G]iven the compensatory nature of the benefits involved, the rescission of plaintiff's retirement benefits was not authorized." *Id.* at 151, 528 *A*.2d 1; *see, Fair Lawn Retired Policemen v. Borough of Fair Lawn,* 299 *N.J.Super.* 600, 605–06, 691 *A*.2d 859 (App.Div.) *certif. denied,* 151 *N.J.* 75, 697 *A*.2d 547 (1997).

The Township contends that *Gauer* is distinguishable because respondents have not yet received any spousal medical benefits. But the *Gauer* Court did not distinguish between those who had already retired and those who continued to work under the original compensation package. It held that benefits could not be rescinded for those "who had been hired—and/or retired—by the predecessor agency under different employment conditions." *Id.* at 147, 528 A.2d 1. The decision was based on the concept that the promise of medical coverage after retirement for those who served the requisite amount of time was part of the employee's compensation and could not be rescinded. As the *Gauer* Court noted, *id.* at 150, 528 *A*.2d 1, the court in *Maywood Educ. Ass'n, Inc. v. Maywood Bd. of Educ.,* 131 *N.J.Super.* 551, 557, 330 *A*.2d 636 (Ch.Div.1974), had held: "[C]ompensation paid to public employees, whatever the label, is not a gift so long as it is included within the conditions of employment either by statutory discretion or contract negotiation." Moreover, the only reason Thomas and

Theresa have not yet received cross-coverage benefits is that the Township has refused to provide them.

Following *Gauer*, we conclude that the health benefits provided by the resolution are part of respondents' compensation. The benefits are a separate entitlement, personal to the employee, which the Township cannot take away to save costs. At the time the benefits were requested, respondents had each put in their twenty-five years of service to the Township and were ready to retire. They earned what the Township promised them and it is too late for the Township, by resolution or otherwise, to reduce the health benefits available to these two employees.[3]

## III

In conclusion, we hold that the trial court properly construed the Township resolution as providing individual and dependent coverage to each retired employee having twenty-five years of service with the Township. The Township business administrator therefore had no authority to deny Theresa's application for such coverage. Further, because the coverage is a part of respondents' compensation, which they earned through their years of service to the Township, the benefit cannot be rescinded by amending the resolution.

Affirmed.

---

[3] We reject the Township's plea that any adverse ruling be applied prospectively. There is no evidence that our decision will have the kind of significant budgetary impact that might justify prospective-only application. The Township is in no different financial position with respect to respondents than it would be if they were each married to someone else and sought dependent coverage. *See, e.g., Salorio v. Glaser,* 93 *N.J.* 447, 462–69, 461 A.2d 1100, *cert. denied,* 464 *U.S.* 993, 104 *S.Ct.* 486, 78 *L.Ed.*2d 682 (1983).